Oyez, oyez, all persons having business before the Honorable United States Court of Appeals for the District of Columbia Circuit are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. Be seated, please. Case number 18-3073, United States of America v. Shane Browne Appellant. Mr. Smith, good morning. Good morning. May it please the Court, Mike Lev Smith on behalf of Appellant Shane Browne and with me today also is my co-counsel Max McApee. I'd like to reserve three minutes for rebuttal. This case arises from a Lyft ride that Mr. Browne summoned to take him from his Washington apartment to Aberdeen, Maryland and the events that happened afterward. But it's really two cases. It's a case about marijuana possession in which the evidence was overwhelming. And then it's a case about kidnapping and weapon charges in which the evidence was much closer and more ambiguous. And the first issue we've raised in our brief is that the case did not meet the requirements of Rule 8A for joinder, should have been tried separately and that it was a plain error not to try them separately. I just want to touch on a couple of points from the brief, so I'm not going to obviously explain it. Was it a plain error not to try it separately? Excuse me, Your Honor? A plain error not to try it separately? That's correct. What's your clearest statement of law that was being violated by the district judge or what kind of abusive discretion? Well, I think our best case, Your Honor, is Richardson. And Richardson talks about where the charges are discreet and dissimilar on their face, that they can't be tried together. What is the standard to get it can be tried together? Three-part standard, if you agree. Oh, the three-part standard, there are three different elements under Rule 8. If the cases are of the same or similar character, if they're based on the same act or transaction, or if they're connected with or part of a common scheme or plan. Well, in that third element there, this all began with one transaction or with one trip to Maryland and continuation from that, and the phone call was under their promise. Stuff taken back to the department. Why isn't that enough for joinery? Well, Your Honor, I think primarily because the superseding indictment doesn't portray it as part of a common scheme or plan. If you keep in mind the procedural posture. Do you think the indictment has to use that language in order to make it joinable? No, I don't think there's any boilerplate or pro forma language it has to recite, but I think it has to portray events as part of a common scheme or plan, and if you think back to what the original indictment was, the original indictment was just two counts, not including marijuana. That count three was added several weeks later. Mr. Smith, nobody made any objection. I know you weren't trial counsel, but there was no motions in Lemonade whatsoever filed in this case, is that right? Not by the defense, that's correct. In our ineffective assistance argument, we raised that among the several items that we point to, and I think just to jump over to that point briefly, to the extent that this Court looks at the Rule 8a issue or the Rule 14 issue, or the instruction for that matter, and decides that, well, there was legal error, but it doesn't rise to the level of plain error, then I think that goes to prejudice under Strickland in the ineffective assistance claim. But that's a different issue. That's correct. We have to decide this yonder issue on its own as if there were no ineffective assistance issue, don't we? That's correct. Okay, but there never was any objection raised to the particular point you're making, right? That's correct, Your Honor. Okay, thanks. But we maintain that on the standard the Court uses, which is the superseding indictment and under Gooch, the pretrial filings, two of which the government has pointed to, there simply isn't enough to point to this as a common transaction, a common scheme, and I think even... But what about, as the government argues and as the trial judge narrated the situation, you have the defendant desperate for a ride, bringing a suitcase, a quick out and back, smelling of marijuana, going back to his home in D.C., and the narrative that it seems like the district judge is crediting that makes it part of a connected or common scheme is that this urgency and the kidnapping wouldn't have occurred, or it doesn't even matter whether it wouldn't, but it was part of the getting of the marijuana for the related charge. And so what's your counter-narrative that says actually these are really discreet? Well, to first give one quick procedural answer, obviously a lot of what the judge based that on was the trial evidence and his perception of the trial evidence, which clearly he oversaw and he had that perception. I think the main problem with that is it really requires the piling of an inference upon an inference, because we don't know what was in the suitcase. We don't know what was in that bag. And so to accept the version of events that, well, you were out here 80 miles from home, you got this bag, you wanted to get home, because you have a marijuana operation running out of your apartment, I think we have to infer what was in the bag and then we also have to infer what motivated him. And I think that's just too far of a logical leap. It would be a different case, I agree, if the contents of the bag had been established, but what the court did here, and also we raised the point with regard to sentencing, it's just too much of a logical leap based on the evidence. And I think the court has spoken previously in Dorman to not permitting an inference, stacked upon an inference, which I suggest is what happened here. So is it key to your case that the charge is possession, not trafficking? I would say no to that, Your Honor. What I would suggest is perhaps more important is the fact that when you look at the kidnapping charge in the superseding indictment, he's not alleged to have sought interstate transportation for purposes of conducting drug activity or for purposes of trafficking in drugs. All it alleges is that he forced Mr. Flores to take him interstate. And there really is, when you look at the superseding indictment, there really is almost a watertight dichotomy between the marijuana charge and the others. And another point that I think is important from Richardson is it talks about evidentiary overlap being a key to Joinder and the notion of trial economy and convenience. And here, this would have easily made two separate trials. As we've listed in our brief, there was one set of witnesses and exhibits on the weapon and kidnapping charges. There was a completely different set of witnesses and exhibits on the marijuana charge. And the prejudice that Mr. Brown suffered from having both of those tried together is really at the heart of our case. He had severed the two counts and tried the kidnapping separately. And the government had wanted to introduce some evidence of drug activity to fill in for the jury what the motive was on defendant's part in wanting to travel quickly back to D.C. You think it would have been a reversible error had that district judge decided to let in some evidence of the drugs? Well, Your Honor, I think the government would have to meet the test of McGill. They would have to show, look, we're not just offering this as propensity evidence. This is not to show that Mr. Brown is a drug dealer. No, but to show motive in this instance. That's correct. If they could fit it under one of the exceptions to 404B and that would be litigated, then I think the trial judge would have to let it in. I don't think. I have a hard time imagining a circumstance in which 78 pounds of marijuana would be piled on the table. So I think that's a bit of a difference in that respect. And I gather there are three separate counsel, post-trial counsel, and now you. You don't have any idea why Brown's post-trial counsel didn't raise it in an effective assistance claim before the district court, and do you think that matters in terms of our review? Well, my understanding of this court's case law is that if a colorable claim is raised now on appeal, that the court can, if it's clear enough, the court can decide it as a matter of first instance, but what the court will sometimes do is remand. Yeah, isn't it possible and perhaps more appropriate for us to decide this appeal that's before us and then, assuming you lose, and I know it's a bad assumption to make, and I don't mean for it to extend beyond this sentence, but assuming that you lose on all the other issues, to just go ahead and decide this case with the proviso in our opinion that we're not prejudicing any right of the dependent to collateral review on the question of ineffective assistance? I don't think that would be an The final point I'd like to make, briefly, on the removal of instruction 2.219, the government has made the point that, well, Mr. Flores testified that he thought prior to this incident that only victims of domestic violence could take advantage of the U visa program, and I would just suggest, I don't know that the evidence is that clear. I would direct the he says he didn't know that it extended beyond domestic violence, quote, prior to this incident happening, and I think a lot depends on how you define this incident. If he means, you know, before I ever laid eyes on Shane Brown, I didn't know, then that leaves open the possibility that speaking with his wife on the phone, he could have found out, in which case I think the instruction becomes dead on point. So I would just point out that I don't think that testimony is quite as clear as perhaps it's been portrayed. Unless the court has any other questions, I would reserve the balance. I have one that's not, I'm sure it's not part of the record. Is Flores still in this country? I'm sorry, Your Honor? Is Flores still in this country? Your Honor, I don't know that. I have no idea the answer to that question. Perhaps the government does. All right. Thank you. Ms. Heffernan? May it please the Court, Patricia Heffernan on behalf of the United States. I just wanted to focus the argument a bit in the sense of, with respect to joinder, the joinder is either waived or plain error. So the question is whether, at best, it should have been so clear and obvious to the district court that these offenses were misjoined, that the district court should have noticed it on its own and sua sponte severed the charges. So we're not looking at in terms of, and so that burden is on the defendant to show, is on appellant to show that it was just so clearly and obviously that these offenses should not have been joined under 8A. And we think they can't make that showing in this case. And one of the questions, I think, that was asked had to do with sort of what is the general point. And I think the appellant's, basically their argument is it's not a fair inference that the suitcase that he picked up in Maryland contained drugs. I think that's, I think the heart of what their argument is. That it's not a fair inference. That it's not fair, it was not fair to infer that the suitcase that was picked up in, that the appellant picked up in Maryland contained drugs. Was there any evidence whatsoever tying the suitcase that he got from Aberdeen to any of the suitcases in the apartment or to money or drugs? Well there, he's got a suit, he's gone out to pick up, it's the totality of the circumstances. So I gather the answer to my question is no there isn't. We don't even have a photograph of We do. this suitcase matching one in the apartment. We don't have any allegation. We have photographs of all the suitcases in the apartment. But nothing, no description from Flores of the suitcase that Brown brought? He said it was a dark colored wheeled suitcase. But I didn't see any evidence that linked that suitcase to the ones in the apartment. It's just like the other suitcases in the apartment. And so we're talking about an inference. So you can consider the totality of the circumstances and is it reasonable to conclude that that suitcase that he went to pick up contained drugs or drug profits. And we think it is, based on the totality of the circumstances, the district court thought it was completely obvious that that was what he was up to. When you consider everything, not isolating out every piece of evidence and saying well this doesn't prove it and so we're done. If we look at everything, which is, he's clearly transporting marijuana in suitcases because he's got three suitcases stuffed with marijuana in his apartment. So that's a piece of the puzzle. Or somebody is. I mean, I don't think there's evidence that he was transporting those suitcases. Somebody is and it's his. Well, we know he transports suitcases on some occasions because he did that in this case. Right, but that's the question, is whether the assumption has been, whether there's evidence supporting it. Can you explain, I had the same question for you that I had for defense counsel, if in fact the cases had been severed, would marijuana have been admissible in the kidnapping case and if so, can you walk me through how that would have been? Yes, because the drug trafficking is the motive for the kidnapping. It's a fair inference based on all of the evidence, the, as your honor pointed out, a quick trip up to Aberdeen, Maryland that was very expensive, going to meet somebody. As soon as he meets somebody, as soon as he, he comes out quickly, demands a ride back to, he's angry that the round trip has been canceled because that's squashed his plans to get back to D.C. Nonetheless, he won't take no for an answer. He insists on the ride. He gets in the car and he, when he can't sort of charm Mr. Flores into driving him home, that's when he pulls the gun and demands and the kidnapping occurs and demands the ride back to D.C. And this is all, and the inference is, this is, he's in such a rush because he's got contraband. And the, so the marijuana and the huge amounts of cash in the apartment is corroborative proof that this was a, that he was, this is all part of his drug trafficking. So it's your position that the government would have been able to introduce, I mean I'm just pushing you on, you know, given what defense counsel has said, what was introduced was a lot of marijuana, an overwhelming pile of marijuana. Presumably, if counsel had perhaps done this differently for Mr. Brown, there would have been a stipulation that there was some drug that he had been involved in. I think that this trial, I mean, or with the suitcase, what evidence do you really think as, you know, as a, as someone who. In separate trials. Yes. Yeah, I mean, I think that it might have been the case that the district court said, you know what, we'll just, you can bring all the pictures in. We're not going to wheel all the marijuana in. Perhaps that would have happened. But that, that, you know, that's not enough to say that that, there's a reasonable probability of a different outcome in the case. No, we're just trying to get a handle on what the prejudice is or is not. Well, that's what I'm saying. I think, you know, you might have instead of had, I don't think that the district court would have abused its discretion in permitting the government as it did to just briefly show the jury the marijuana, but, but we didn't, the court doesn't need to decide that because let's assume the court in a separate trial would have limited the government to photographs of all the marijuana. In this court assessing plain error prejudice, the fact that in separate trials, the government would have introduced photographs of all the marijuana as opposed to all of the physical marijuana, the court can't say that that, that difference would have resulted in a reasonable probability of a different outcome at the kidnapping trial. Well, remember, this is a case where the jury was, had a hard time reaching a verdict on all but one of the counts. Presumably the one count they reached a verdict on was the drug count that was, there was no defense raised. And so they're, they're really struggling with this, even with the evidence that was presented. So I do think it's important that we understand your position on what the evidence would have looked like. Oh, I agree. And separate. And did you have any, will you point me to where in the record the government made the link about the suitcase evidence and the suitcase that Flores testified to, is there, I didn't. In both the opening. I didn't see that tied up. In both the opening and closing arguments. Right, I saw that. But in the evidence, was there any witness or any evidentiary matter other than the argument? The witness, Mr. Flores, described the suitcase and the suitcase looked just like the other suitcases that were found in the search warrant that were clearly in the apartment at the time that the defendant, appellant, was making his trip, quick trip up to Aberdeen, Maryland and back. And then I just wanted to touch briefly, so moving away from Joinder if there are no further questions and hoping that the court focuses on the plain error standard at best as opposed to a discussion as though we're looking at this for abuse of discretion. Moving to the jury instruction, I just wanted to point out that, again, this is, we're on plain error review, the instruction was not requested. So it had to, it must be so clear and obvious that this instruction was warranted, let alone getting into the prejudice inquiry. Not just warranted, but required. Required, yes. Thank you. What I just wanted to point out is, I think if the jury had been told, you've heard evidence that Mr. Flores is under investigation, they would have been scratching their heads. Because that sounds in criminal, like he's under criminal investigation. I think what, as you listen to the argument appellant is making, I think what they really are saying is they wanted an instruction saying, you've heard evidence that he's in immigration proceedings and you should consider that. But that's not the, again, he didn't request that instruction either and they're not really, they haven't requested that on appeal, but I think that's really what the argument and that instruction wasn't requested either at trial or before this court. But I think that is sort of the heart of what they're getting at. That's what would make more sense. If there are no further questions, we'd ask that the judge be heard. I would ask you one thing, although I'm the one who suggested maybe we don't want to decide the ineffectual assistance. But you seem to take your position in the brief that there was no problem with, where the defendant had said, I would like to have my lawyer present with the interrogation continuing. I don't know what the record really shows, so this may be a hypothetical question, but is that the government's position? I don't know what the record shows either, because the interrogation wasn't in the record. Our position was, if that's so, and assuming that constitutes a true legal invocation, in any event... All right. Forget the part about assuming it constitutes a true legal invocation. Assume that he said what the defense says he said. Is it the government's position that that would not violate his Miranda rights for the investigators to continue interrogating? We assume that it did, and asked the court to look at Patain, which said that in any event, physical evidence wouldn't be required to be suppressed unless the statement was also involuntary, and there's no evidence of that in the record. The suppression of his statement is what I'm concerned with. Well, the government didn't introduce his statement. They did not introduce his statement. Yes. Do you know if Mr. Flores is still here? I believe he is. Thank you. Just very briefly, to your last point, Judge Sentell, the statements were used in the first search warrant. Yeah, they were used not in the trial, but in the first search warrant. Correct. That's correct. But I have nothing further.
judges: Henderson, Pillard, Sentelle